**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **KAYA HUDGINS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 23 C 218** |
| | ) | |
| **BOARD OF EDUCATION OF** | ) | |
| **THE CITY OF CHICAGO;** | ) | |
| **THE DAVID LYNCH FOUNDATION;** | ) | |
| **and the UNIVERSITY OF CHICAGO,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| **MARIYAH GREEN and SHAVON GIBSON,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 23 C 646** |
| | ) | |
| **BOARD OF EDUCATION OF** | ) | |
| **THE CITY OF CHICAGO;** | ) | |
| **THE DAVID LYNCH FOUNDATION;** | ) | |
| **and the UNIVERSITY OF CHICAGO,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

In two separate lawsuits, Kaya Hudgins (Case No. 23 C 218) and Mariyah Green and Shavon Gibson (Case No. 23 C 646) have sued the Board of Education of the City of Chicago (the Board), the David Lynch Foundation (DLF), and the University of Chicago (the University) regarding the implementation of a program called "Quiet Time" in several Chicago public schools. The plaintiffs allege that Quiet Time included

elements of both the Hindu religion and a practice known as Transcendental Meditation. Under 42 U.S.C. § 1983, they contend that the use of the Quiet Time program in Chicago public schools violates both the Establishment Clause and the Free Exercise Clause of the federal Constitution. The plaintiffs also assert claims under the Illinois Religious Freedom Restoration Act (IRFRA), Illinois common law, and the Illinois Constitution. The defendants have moved to dismiss the plaintiffs' claims. For the reasons stated below, the Court partially grants the motion and dismisses Gibson's section 1983 claim against all three defendants, Hudgins's and Green's section 1983 claim against the University, and all three plaintiffs' state law claims.

## Background

The following facts are drawn from the plaintiffs' amended complaint. Because the Court is considering a motion to dismiss, it accepts as true the complaint's well-pleaded factual allegations. *Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). That said, the Court "offer[s] no opinion on the ultimate merits," recognizing that "further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020). A court addressing a Rule 12(b)(6) motion may consider not just the complaint's allegations but also matters of which it may properly take judicial notice, including official court records. *White v. Keely*, 814 F.3d 883, 885 n.2 (7th Cir. 2016); *Olson v. Champaign Cty.*, 784 F.3d 1093, 1097 n.1 (7th Cir. 2015). "A plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he is not entitled to judgment." *In re Wade*, 969 F.2d 241, 249 (7th Cir. 1992).

## A.     The parties

Hudgins and Green are former Chicago Public Schools (CPS) students who attended Bogan Computer Technical High School (Bogan), a school that hosted the Quiet Time program from 2017–2019.  Gibson is Green's mother.  Both Hudgins and Green were students at Bogan during the 2018–2019 school year, and they both were under the age of eighteen at the time.  Green turned eighteen on January 28, 2020, and Hudgins turned eighteen on April 18, 2021.[1]

The defendants were involved in implementing the Quiet Time program in Bogan and seven other Chicago schools.  The Board approved the program and entered into a services contract with DLF, which stated that DLF was to operate Quiet Time in schools and hire certified instructors to teach Transcendental Meditation to students.  The Board also permitted the University to conduct a study researching and evaluating the effects of the Quiet Time program.

## B.     The Quiet Time program

Quiet Time took place during the school day and used space on school property. The program consisted of two fifteen-minute meditation sessions—one in the morning and one in the afternoon—on every school day.  Sessions were typically led by Transcendental Meditation instructors who were certified by the Maharishi Foundation, an independent not-for-profit organization, and hired by DLF.  When a Transcendental Meditation instructor was unavailable, CPS teachers were expected to lead meditation

---

[1] The Court grants the defendants' unopposed request to take judicial notice of Green's date of birth as a matter of public record.  *Fosnight v. Jones*, 41 F.4th 916, 925 (7th Cir. 2022) ("It's well established that judges may take judicial notice of matters of public record when ruling on a motion to dismiss.").

sessions.

Though the defendants represented Quiet Time as non-religious in nature, as discussed below, the plaintiffs allege that the program had what they call "hidden religious" elements. Hudgins Compl. ¶ 73, Green Compl. ¶ 71. These elements include a "Puja" initiation ceremony that the plaintiffs allege is a mandatory part of learning Transcendental Meditation. The initiation ceremonies were led by the Transcendental Meditation instructors, who placed items around a picture of a former teacher of Transcendental Meditation, chanted in Sanskrit, and performed rehearsed movements. Translated into English, the words chanted in Sanskrit included "statements recognizing the power possessed by various Hindu deities and invitations to those same Hindu deities to channel their powers through those in attendance." Hudgins Compl. ¶ 44; Green Compl. ¶ 42.

When the Transcendental Meditation instructors taught students how to meditate, they assigned each student a "mantra" and instructed the students to silently repeat their mantras as they meditated. The mantras were Sanskrit words, and the instructors did not explain the English meaning of those words to the students. The plaintiffs assert that although the instructors told students that the mantras were "meaningless sounds," the words "honor or reference specific Hindu deities." Hudgins Compl. ¶¶ 51, 56; Green Compl. ¶¶ 49, 54. The plaintiffs also allege that learning Transcendental Meditation "involved asking the student to take an oath to secrecy" regarding the initiation ceremony and their mantras and that "failing to keep the oath to secrecy would render the practice of 'Transcendental Meditation' wholly ineffective." Hudgins Compl. ¶¶ 60, 63; Green Compl. ¶¶ 58, 61.

4

The complaint does not state when Quiet Time ended at Bogan or other CPS schools, but a September 2019 email between the defendants indicates that the agreement between the Board and DLF expired in June 2018, and "there [was] no entitlement for [DLF] to continue in the District's schools" by September 10, 2019 at the latest.  Hudgins Compl., Ex. O; Green Compl., Ex. 14.  The defendants assert—and the plaintiffs do not dispute—that the Quiet Time program ended at Bogan and other schools on the last day of the 2018–2019 school year, which this Court found in a prior opinion was June 18, 2019.  *Williams Summary Judgment Decision*, 2023 WL 3479161, at *3 (N.D. Ill. May 16, 2023).

## C.     Plaintiff-specific allegations

### 1.     Hudgins

Hudgins attended Bogan during the 2018–2019 and 2019–2020 school years, her sophomore and junior years of high school.  Hudgins alleges that she "felt pressured by a CPS teacher to sign a consent form to participate in 'Quiet Time.'"  Hudgins Compl. ¶ 87.  She also asserts that she "was told she would get in trouble and sent to the dean if she did not sign the consent form" and that her refusal "would affect her academics."  *Id.*

Hudgins witnessed the initiation ceremony as part of her Transcendental Meditation training, and she alleges that the instructor "gave her an orange and told her to put the orange in front of the picture on the table of a man dressed like a Hindu priest."  *Id.* ¶ 88.  She states that there were "rice, lights, and fruit" on the table, and she felt "like [she] was in a trance, similar to hypnosis" while the instructor spoke in an unfamiliar language and rang a bell.

5

After her training, Hudgins felt forced to practice Transcendental Meditation and "mentally recite her mantra" during the daily Quiet Time sessions. *Id.* ¶ 89. Hudgins, who is a practicing Muslim, states that her participation in Transcendental Meditation caused her "to question her Islamic beliefs." *Id.* ¶ 92. Hudgins also alleges that a teacher sent her to the dean's office when she complained about Quiet Time, which caused her to feel "angry and hurt." *Id.* ¶ 91.

. Hudgins transferred to another school for the 2020–2021 school year, and she turned eighteen on April 22, 2021.

Hudgins's sworn declaration—which is incorporated by reference in the complaint—largely matches the above allegations.

### 2. Green and Gibson

Green attended Bogan from September 2018 until she graduated in the spring of 2020, and she was sixteen when she first participated in Quiet Time. Green alleges that she was told her cooperation in Quiet Time "would count toward her grades," and she says she "did not want to be kicked off the basketball team for bad grades." Green Compl. ¶ 82. As a result, she felt forced to participate in Quiet Time and Transcendental Meditation even though she told teachers that she believed the practice was "not normal." *Id.* ¶ 81. Green, who regularly attends a Christian church and was raised as a Christian, also asserts that she witnessed the initiation ceremony and "told the [Transcendental Meditation] instructor that her knee was injured in order to avoid kneeling before the image of a man in a photograph on a table in the middle of the room who looked like Buddha, because it was against [her] religion to kneel before anyone except for Jesus Christ." *Id.* ¶¶ 79, 84. Green's sworn declaration—which is

incorporated by reference in the complaint—largely matches the above allegations.

Gibson is Green's mother. Gibson states in her sworn declaration that on or around September 25, 2018, Green informed her that a teacher attempted to force Green to "pray to a statue." Green Compl., Ex. 10, ¶ 4. Gibson also attests that she told Green to call Gibson's sister Tracey Lee and the family's pastor. The following day, Lee emailed a Bogan employee about the incident and asserted that it was "unacceptable" for the school to teach Green "a certain kind of meditation because [the Green-Gibson family] as Christians do not choose to meditate in that manner." *Id.* ¶ 7.

## D.  Procedural history

The present cases are related to an earlier case also assigned to the undersigned judge. Amontae Williams, another student at Bogan, and his father Darryl Williams brought suit against the defendants in August 2020.[2] The Williamses asserted essentially the same claims that Hudgins, Green, and Gibson now assert, and all five individuals are represented by the same counsel. In a series of decisions, the Court granted the defendants' motion to dismiss the Williamses' amended complaint in part, granted the Williamses' motion to leave to amend their complaint, denied Amontae Williams's motion for class certification, dismissed Darryl Williams's claim for lack of standing, and denied the Williamses' motion for reconsideration. *See Separation of Hinduism From Our Schs. v. Chicago Pub. Schs., City of Chicago Sch. Dist. #299*, No. 20 C 4540, 2021 WL 2036536 (N.D. Ill. May 21, 2021) ("*Williams Motion to Dismiss Decision*"); *Separation of Hinduism From Our Schs. v. Chicago Pub. Schs.*, No. 20 C

---

[2] The original lawsuit included other individuals and organizations, but the Court dismissed those plaintiffs for want of standing. *See Williams Motion to Dismiss Decision*, 2021 WL 2036536.

4540, 2021 WL 3633939 (N.D. Ill. Aug. 17, 2021); *Williams v. Bd. of Educ. of the City of Chicago*, No. 20 C 4540, 2022 WL 4182434 (N.D. Ill. Sept. 13, 2022) ("*Williams Class Certification Decision*"); *Williams v. Bd. of Educ. of the City of Chicago*, No. 20 C 4540, 2022 WL 17082571 (N.D. Ill. Nov. 18, 2022). Counsel then moved to add Hudgins, Green, and Gibson as new plaintiffs in the *Williams* case in December 2022, a motion the Court denied in an oral ruling. Hudgins, Green, and Gibson filed the present suits in February 2023. The Court partially granted summary judgment in the defendants' favor in the *Williams* case in May 2023. *See Williams v. Bd. of Educ. of the City of Chicago*, No. 20 C 4540, 2023 WL 3479161 (N.D. Ill. May 16, 2023) ("*Williams Summary Judgment Decision*").

## Discussion

The defendants challenge the sufficiency of the plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6). Dismissal under Rule 12(b)(6) is proper if a complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss the complaint must state a claim for relief that is plausible on its face." *Doe v. Columbia Coll. Chicago*, 933 F.3d 849, 854 (7th Cir. 2019) (internal quotation marks omitted). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (internal quotation marks omitted).

## A.    Statute of limitations

The defendants contend that many of the plaintiffs' claims are time-barred and must be dismissed. Specifically, they assert that Gibson's section 1983 claim against all

8

three defendants, Green's section 1983 claim against the University, and all of the plaintiffs' state law claims are untimely.

"Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). However, "when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness," a court may dismiss the complaint. *Id.* at 674–75; *see also Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) ("[T]he statute of limitations may be raised in a motion to dismiss if 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.'").

### 1. Section 1983 claims

The limitations period for claims under 42 U.S.C. § 1983 is borrowed from the state statute of limitations for personal injury claims. *Mitchell v. Donchin*, 286 F.3d 447, 450 n.1 (7th Cir. 2002). The statute of limitations "applicable to *all* [section] 1983 claims brought in Illinois is two years, as provided in 735 ILCS 5/13–202." *Woods v. Ill. Dep't of Child. & Fam. Servs.*, 710 F.3d 762, 768 (7th Cir. 2013) (emphasis in original). A "claim accrues when the plaintiff knows or should know that his or her constitutional rights have been violated." *Janus v. Am. Fed'n of State, Cty. & Mun. Emps., Council 31; AFL-CIO*, 942 F.3d 352, 361 (7th Cir. 2019) (internal quotation marks omitted). "A plaintiff does not need to know that his injury is actionable to trigger the statute of limitations—the focus is on the discovery of the harm itself, not the discovery of the elements that make up a claim." *Cancer Found., Inc.*, 559 F.3d at 674. To determine the accrual date, courts must "identify the injury" and then "determine when the plaintiff

9

could have sued for that injury." *Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011).

### a. Gibson

Gibson's claim is based on the allegation that her daughter Green was coerced into participating in Quiet Time and learning Transcendental Meditation. Although the complaint itself does not allege a date when Gibson learned of the program, Gibson stated in her attached declaration that she learned Green was allegedly being forced to pray on or about September 25, 2018. The complaint also states that Gibson's sister emailed a CPS employee on September 26, 2018 stating that it was not acceptable for the school to teach Green Transcendental Meditation.

The defendants thus contend that Gibson's section 1983 claim accrued on September 26, 2018 because that is when she "[knew] or should [have known] that [] her constitutional rights have been violated." *Janus*, 942 F.3d at 361. Gibson appears to assert that her claim did not accrue in September 2018 because the defendants' actions constituted a continuing violation of her First Amendment rights. Even if this were the case, however, the Court takes judicial notice that the last day of the 2018–19 school year—the last year of the Quiet Time program at Bogan—was June 18, 2019. *See Williams Summary Judgment Decision*, 2023 WL 3479161, at *1. The two-year limitations period for Gibson's section 1983 claim therefore ended on June 28, 2021 at the latest. Gibson did not file her suit until February 2023.

Gibson also argues that Darryl Williams' lawsuit on behalf of a class of parents tolled the statute of limitations for her claims. "[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."

*Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974); *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353–54 (1983). And "[o]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied." *Crown, Cork & Seal Co.*, 462 U.S. at 354. The Seventh Circuit has held, however, that there is an exception to this general rule if the original named plaintiff lacked standing to bring the suit, which is the case here. The court stated in *Walters v. Edgar*, 163 F.3d 430 (7th Cir. 1998), that "[c]ertification of a class action comes after the suit is filed, so if the named plaintiffs lacked standing when they filed the suit, there were no other party plaintiffs to step into the breach created by the named plaintiffs' lack of standing; and so there was no case when class certification was sought." *Id.* at 432–33; *see also Palmer v. Stassinos*, 236 F.R.D. 460, 465 (N.D. Cal. 2006) ("The Seventh Circuit has [held] that the filing of a purported class-action complaint by a plaintiff who lacks standing does not toll the statute of limitations for those who later seek to intervene as plaintiffs."), *Boilermakers Nat'l Annuity Trust Fund v. WaMu Mortg. Pass Through Certificates, Series AR1*, 748 F. Supp. 2d 1246, 1260 (W.D. Wash. 2010) ("Courts since *American Pipe* have found that the statute of limitations does not toll for putative class actions whose named plaintiff lacks standing to advance claims in the first place.") (citing *Walters*).

In November 2022, this Court denied the motion by Amontae Williams's father Darryl Williams for class certification and also "dismisse[d] his section 1983 claim for lack of standing." *Williams Class Certification Decision*, 2022 WL 4182434, at *5–6. Thus under *Walters*, Gibson's claim was not tolled during the pendency of *Williams.* To the extent that she argues for tolling because she believes Darryl Williams's case was

wrongly dismissed and subject to appeal, that is not the law. *In re Copper Antitrust Litig.*, 436 F.3d 782, 793 (7th Cir. 2006) ("The general rule is that the judgment of a district court becomes effective and enforceable as soon as it is entered; there is no suspended effect pending appeal unless a stay is entered. There is no reason why the class certification question should somehow be exempt from this rule.").

Lastly, Gibson contends that her claims are timely because equitable tolling applies. The Court disagrees. A party is "'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citation omitted). The complaint makes it clear that Gibson discovered the harm to her daughter—and thus her rights as a parent—by June 2019 at the latest. Gibson has not described how she diligently pursued her rights, and more importantly she does not reference any extraordinary circumstances that prevented her from timely filing a lawsuit.

Putting matters in the best light for the plaintiffs, the procedural background of Gibson's complaint suggests that she brought this lawsuit when she did after this Court, having denied a motion to add new plaintiffs in the *Williams* case, "instructed the parties that a new Complaint . . . might be the best procedural step." Green Compl. at 2. But although the Court noted that Gibson, Green, and Hudgins could bring their own lawsuit if they chose to, the reason the Court denied the motion to add them as new plaintiffs in the *Williams* case was that they waited far too long to do so given the history of that case, which at that point was just three months short of trial.

The Seventh Circuit has held that permitting substitution of class action plaintiffs

is not warranted when "it was obvious from the outset that these named plaintiffs faced a serious challenge to their status as class representatives." *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 827 (7th Cir. 2011). This Court dismissed Darryl Williams's claims based on issues that had been known to the plaintiffs since the inception of the *Williams* suit: Darryl "seemingly concede[d] that his claims may not encompass events that occurred beyond Amontae's eighteenth birthday" and failed to cite "any case in which a parent of an adult child has been able to assert claims alleging interference with that child's religious upbringing." *Williams Motion to Dismiss Decision*, 2021 WL 2036536, at *7. Furthermore, the evidence Darryl ultimately submitted in support of his motion for class certification made it clear that "none of the events giving rise to Darryl's claim occurred before Amontae's eighteenth birthday," and Darryl again "cite[d] no legal authority supporting" his argument that "offering pizza and snacks to encourage student participation in optional activities" violated his First Amendment rights as a parent. *Williams Class Certification Decision*, 2022 WL 4182434, at *7. Because "[i]ntervention shouldn't be allowed just to give class action lawyers multiple bites at the certification apple, when they have chosen, as should have been obvious from the start, patently inappropriate candidates to be the class representatives," *Randall*, 637 F.3d at 827, filing a new case was not merely "the best procedural step" but the appropriate step when summary judgment briefing was pending and the case was three months away from trial.[3] It seems to the Court that Gibson's counsel may have been unaware that

---

[3] Even if *Randall* did not control, the Seventh Circuit has held that "[s]ubstitution of unnamed class members for named plaintiffs who fall out of the case because of settlement or other reasons" is not allowed where "jurisdiction never attached, as in *Walters v. Edgar*[.]" *Phillips v. Ford Motor Co.*, 435 F.3d 785, 787 (7th Cir. 2006).

*American Pipe* tolling does not apply when the original class representative lacks standing to bring a claim. But "[m]istakes of law or ignorance of proper legal procedures are not extraordinary circumstances warranting invocation of the doctrine of equitable tolling." *Arrieta v. Battaglia*, 461 F.3d 861, 867 (7th Cir. 2006); *see also Williams v. Sims*, 390 F.3d 958, 963 (7th Cir. 2004) ("[E]ven reasonable mistakes of law are not a basis for equitable tolling"). The Court therefore declines to apply equitable tolling in this case.

For the reasons above, the Court concludes that Gibson's section 1983 claim is barred by the statute of limitations and grants the defendants' motion to dismiss on this ground.

### b. Green's claim against the University

The defendants next contend that Green's section 1983 claim is untimely as it relates to the University. The Court agrees. First, the parties do not dispute that absent any tolling, the limitations period for Green's claim ended two years after her eighteenth birthday, in other words on January 28, 2022. *See* 735 ILCS 5/13-211(a) (permitting a person who "at the time the cause of action accrued, is under the age of 18 years" to "bring the action within 2 years after the person attains the age of 18 years").

Second, the parties agree that *American Pipe* tolling applies to Green's claim, but they disagree regarding the length of the tolling period. Green contends that *American Pipe* tolling applied until this Court denied Amontae Williams' motion for class certification. Although this is correct regarding Green's section 1983 claim against the Board and DLF, "[t]olling stops immediately when a class-action suit is dismissed—with or without prejudice—before the class is certified." *Collins v. Village of Palatine*, 875

14

F.3d 839, 840 (7th Cir. 2017). This Court dismissed the Williamses' section 1983 claim against the University on May 21, 2021, and it later denied leave to amend regarding that specific claim. *See Williams Motion to Dismiss Decision*, 2021 WL 2036536, at *20; *Separation of Hinduism*, 2021 WL 3633939, at *5–6. The defendants are therefore correct that the statute of limitations for Green's section 1983 claim against the University was tolled only for the 238 days between the date of that putative class action complaint in *Williams*—September 25, 2020—and May 21, 2021.

Adding the 238 days of tolling to January 28, 2022, the Court concludes that the limitations period for Green's section 1983 claim against the University expired on September 23, 2022. Because Green did not bring her suit until February 2023, the Court grants the University's motion to dismiss her section 1983 claim because it is time-barred.[4]

### 2.    State law claims

The plaintiffs assert claims under IRFRA, Illinois common law, and the Illinois Constitution. The Court agrees with the defendants that all of these claims are untimely.[5]

---

[4] Counsel's motion for leave to add Green as a new plaintiff was therefore also untimely even if the Court had been inclined to grant it, as counsel moved for leave to amend in December 2022—almost three months after the limitations period for Green's claim against the University expired. Furthermore, the Seventh Circuit has held that substitution of class representatives is improper when "the attempt to substitute comes long after the claims of the named plaintiffs were dismissed," *Phillips*, 435 F.3d at 787, and counsel moved to add Green as a plaintiff over a year after this Court dismissed the Williamses' section 1983 claim against the University.

[5] Because the plaintiffs have "[pled themselves] out of court by alleging facts sufficient to establish the complaint's tardiness," *Cancer Foundation*, 559 F.3d at 674, the Court need not address the defendants' arguments for dismissal of these claims on the merits.

"When state law supplies the period of limitations, it also supplies the tolling rules[,]" *Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 265 (7th Cir. 1998), and "the Illinois statute of limitations is not tolled during the pendency of a class action in federal court." *Portwood v. Ford Motor Co.*, 183 Ill. 2d 459, 467, 701 N.E.2d 1102, 1105 (1998); *see also Ottaviano v. Home Depot, Inc., USA*, 701 F. Supp. 2d 1005, 1012-13 (N.D. Ill. 2010) (holding that *Portwood* precluded tolling of state law claims in federal court), *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2015 WL 3988488, at *25 (N.D. Ill. 2015) (courts "must look to the laws of the various states at issue to determine whether those states recognize class-action tolling during the pendency of a federally-filed action (i.e., whether the filing of a putative class action in federal court tolls the statutes of limitation applicable to state law claims asserted by new plaintiffs in a subsequent putative class action in federal court)").

### a.     Gibson

As this Court has previously concluded, "due to the Board's status as a governmental entity, the [state law] claim against the Board is subject to a one-year statute of limitations." *Williams Motion to Dismiss Decision*, 2021 WL 2036536, at *14. The Court did not dismiss the IRFRA claims in *Williams* under Rule 12(b)(6), stating that "the complaint does not explain—and does not have to explain—what actions the defendants took beyond the limitations period that the plaintiffs might be relying upon to claim a continuing violation." *Id.* The Court later found, however, that the 2018–19 school year ended on June 18, 2019. *Williams Summary Judgment Decision*, 2023 WL 3479161, at *9. Consequently, even if the statute of limitations on Gibson's state law claims began running on June 18, 2019 because the defendants' actions constituted a

continuing violation of her First Amendment rights, the one-year limitations period expired on June 28, 2020.  Yet Gibson did not assert her state law claims until three years later, and even the class action complaint in *Williams* was not filed until September 2020—almost three months after the limitations period expired.  Gibson's state law claims are thus time-barred, and the Court grants the defendants' motion to dismiss relating to these claims.

### b. Green and Hudgins

When a plaintiff "was a minor when her cause of action accrued" and the "defendants are a local governmental entity," "the one-year limitations period of section 8-101 of the Tort Immunity Act also applie[s] to [the plaintiff] and beg[ins] to run when she reache[s] 18 years of age."  *Ferguson v. McKenzie*, 202 Ill. 2d 304, 312, 780 N.E.2d 660, 665 (2001).  The parties do not dispute that Green's eighteenth birthday was January 28, 2020 and Hudgins's eighteenth birthday was April 22, 2021.  The continuing violation issue is irrelevant on this point because Quiet Time ended long before either of their eighteenth birthdays.  The one-year limitations period to assert their state law claims therefore ended on January 28, 2021 for Green and on April 22, 2022 for Hudgins.  Because "the Illinois statute of limitations is not tolled during the pendency of a class action in federal court," *Portwood*, 183 Ill. 2d at 467, 701 N.E.2d at 1105, their February 2023 lawsuit is untimely regarding these claims.

Hudgins's complaint also states that she brought this lawsuit because this Court "instructed the parties that a new Complaint . . . might be the best procedural step." Hudgins Compl. at 2.  To the extent that Hudgins and Green contend the Court should excuse their delay because it directed them to bring their claims as a separate lawsuit,

the Court overrules this argument for the reasons previously stated. *See* Part A.1.a, *supra*, at 12–13. As with Darryl Williams, "it was obvious from the outset that [Amontae Williams] faced a serious challenge to [his] status as [a] class representative[]." *Randall*, 637 F.3d at 827. Even setting aside Amontae Williams's inadequacy as a class representative because he had "surrendered his responsibility to make final litigation decisions to a 'Steering Committee' [that did not include] Amontae himself," *Williams Class Certification Decision*, 2022 4182434, at *3–5, it ought to have been clear from the inception of his case that his state law claims were untimely. Unlike Hudgins or Green, Amontae Williams reached the age of eighteen before June 18, 2019, so there was no basis for tolling. The one-year limitations period for his state law claims thus ended on June 18, 2020. Amontae did not file a putative class action complaint until September 2020, however, and the Court sees no basis to allow plaintiffs' counsel "multiple bites at the certification apple"—whether through amending the complaint, intervention, or filing of new lawsuits—when they chose "patently inappropriate candidates to be the class representatives." *Randall*, 637 F.3d at 827

Consequently, the Court also grants the defendants' motion to dismiss Green's and Hudgins's state law claims as time-barred.

**B.    Failure to state a claim**

Each defendant challenges the sufficiency of the plaintiffs' complaints. At this stage, the Court must accept as true the plaintiffs' well-pleaded factual allegations and must draw all reasonable inferences from those well-pleaded allegations in favor of the plaintiffs. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). "A complaint need not contain detailed factual allegations, but must contain sufficient

factual matter, accepted as true, to state a claim for relief that is facially plausible. The allegations must be sufficient to raise a right to relief above the speculative level." *O'Gorman v. City of Chicago*, 777 F.3d 885, 888–89 (7th Cir. 2015) (citations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bissessur*, 581 F.3d at 602 (citation omitted).

The only claims that remain after the Court's rulings on timeliness are Green and Hudgins's section 1983 claims against the Board and DLF and Hudgins's section 1983 claim against the University. The defendants argue that these claims should be dismissed because the plaintiffs fail to sufficiently allege *Monell* liability for any of the defendants or state action by DLF or the University. In the alternative, the defendants assert that the Court should limit the plaintiffs' remedies to nominal damages because they have failed to allege compensatory damages. The Court addresses each argument in turn.

### 1. *Monell* liability

"A court may not hold a government entity, such as a board of education, liable under § 1983 unless the entity adopted a policy or custom that resulted in the deprivation of the plaintiff's constitutional rights." *Bennett v. Roberts*, 295 F.3d 687, 699 (7th Cir. 2002) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). To establish liability under *Monell*, "a plaintiff must ultimately prove three elements: (1) a municipal action, which can be an express policy, a widespread custom, or an act by an individual with policy-making authority; (2) culpability, meaning, at a minimum, deliberate conduct; and (3) causation, which means the municipal action was the

19

'moving force' behind the constitutional injury." *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 598 (7th Cir. 2019).

### a.     The Board

Under Illinois law, "the School District's Board of Education has full power to manage the schools and to adopt all rules and regulations needed for that broad purpose." *Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1061 (7th Cir. 1998) (citing 105 ILCS 5/10–20.5).  The defendants contend that the plaintiffs have failed to establish liability under *Monell* because there was no allegation that a custom or policy by the Board was the "moving force" behind the violation of the plaintiffs' First Amendment rights.

The plaintiffs allege in their complaints, however, that the Board entered into a "Services Agreement" with DLF to implement the Quiet Time program at Bogan and other schools despite knowing of the program's allegedly religious nature.  Hudgins Compl. ¶¶ 26, 95; Green Compl. ¶¶ 24, 94.  Contrary to the defendants' assertion that the plaintiffs "conflate the Quiet Time Program and the practice of [Transcendental Meditation]," Defs.' Reply at 6, Hudgins and Green allege that they were pressured to participate in Transcendental Meditation training as part of the Quiet Time program and that their refusal to participate would impact their academic record.  Hudgins Compl. ¶¶ 87, 88; Green Compl. ¶¶ 82, 84.  Accepting these allegations as true, as it must at this stage, the Court concludes that the plaintiffs have sufficiently alleged an express policy by the Board to implement Quiet Time and pressure students to learn Transcendental Meditation in several of its schools.  The allegations are also sufficient to establish culpability and causation, as the Seventh Circuit has "expressly held that 'inferences of

culpability and causation are easy' in cases involving an affirmative action by the entity [because] those inferences 'follow directly from the [entity]'s intentional decision to adopt the unconstitutional policy or custom or to take particular action' and '[d]eliberate conduct is easily inferred from the intentional adoption of the offending policy.'" *Williams Summary Judgment Decision*, 20223 WL 3479161, at \*4 n.3 (quoting *J.K.J. v. Polk County*, 960 F.3d 367, 377 (7th Cir. 2020)).

The Court therefore denies the defendants' motion to dismiss as it relates to the Board's liability under *Monell*.

### b. DLF

Although DLF is a private entity, in the Seventh Circuit "the Monell theory of municipal liability applies in § 1983 claims brought against private companies that act under color of state law." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016). As with government defendants, private entities are not liable under section 1983 based on employment of a tortfeasor. *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019). Rather, a plaintiff must plausibly allege that the "constitutional violation was caused by an unconstitutional policy or custom of the [private entity] itself." *Shields v. Illinois Dep't of Corrs.*, 746 F.3d 782, 789 (7th Cir. 2014).

As discussed previously, plaintiffs allege that DLF and the Board entered into a services agreement to implement Quiet Time at Bogan and other schools. Hudgins Compl. ¶¶ 94–95; Green Compl. ¶¶ 93–94. That agreement states that DLF "will organize and provide instruction to participating students in the Transcendental Meditation program," Hudgins Compl., Ex. R; Green Compl. Ex. 17, and the plaintiffs allege that DLF created Quiet Time to teach Transcendental Meditation despite its

religious elements.  Hudgins Compl. ¶ 20; Green Compl. ¶ 18.  To the Court, this is a sufficient allegation that DLF as an entity adopted an official policy of working with the Board to introduce Quiet Time and Transcendental Meditation, and this affirmative action is sufficient to support an inference of culpability and causation.  *See J.K.J.*, 960 F.3d at 377.

Consequently, the Court denies the defendants' motion to dismiss as it relates to DLF's liability under *Monell*.

### c.    The University

The plaintiffs have similarly alleged sufficiently that the University had an express policy of collaborating with the Board, as it entered into a "Master Services Agreement" with the Board to "conduct and/or evaluate research projects involving [Chicago Public Schools] students."  Green Compl. ¶ 95; *see also* Hudgins Compl. ¶ 96.  Yet whereas DLF's services agreement required it to instruct students in the allegedly religious practice of Transcendental Meditation, the University's agreement does not call for it to take similarly unconstitutional actions, and plaintiffs do not so allege.  Rather, the plaintiffs allege only that the University (1) submitted a research application to the Board for its approval, (2) "was obligated to perform its Quiet Time research within the restrictions imposed by the Board," (3) "conducted focus groups with [Chicago Public Schools students," and (4) provided advice regarding "class period scheduling to incorporate the Quiet Time program."  Hudgins Compl. ¶¶ 109–12; Green Compl. ¶¶ 105–08.  This is equivalent to the allegations in the *Williams* case that "University employees were sympathetic to the Quiet Time program and conducted research involving students in the program," which this Court has already determined were "not

sufficient to impose liability under *Monell*." *Separation of Hinduism*, 2021 WL 3633939, at *6.

The Court thus grants the defendants' motion to dismiss Hudgins's section 1983 claim against the University.[6]

### 2. State action

A plaintiff asserting a section 1983 claim must allege that the defendants deprived him of a right guaranteed by either the Constitution or laws of the United States and that the defendants acted under color of state law. *L.P. v. Marian Cath. High Sch.*, 852 F.3d 690, 696 (7th Cir. 2017). Here, the plaintiffs allege that the defendants violated, and conspired to violate, their rights under the First Amendment. DLF responds that the plaintiffs have failed to sufficiently allege that it acted under color of state law.[7]

DLF is a private, rather than public, actor. As such, it cannot be liable under section 1983 "unless something intervenes to give [it] 'state actor' status." *See id.* A private actor may become a state actor for purposes of section 1983 "when it is a willful participant in joint action with the State or its agents." *Tom Beu Xiong v. Fischer*, 787 F.3d 389, 398 (7th Cir. 2015) (alterations accepted) (internal quotation marks omitted). "To establish [section] 1983 liability through [the joint participation doctrine], a plaintiff

---

[6] Though this analysis also applies to Green's and Gibson's section 1983 claims against the University, the Court has determined that those claims are barred by the statute of limitations. *See* Part A.1, *supra*.

[7] Although the University raises similar points, the Court addresses this argument only as it relates to DLF because Court has dismissed the plaintiffs' section 1983 claim against the University for failure to sufficiently plead *Monell* liability. *See* Part B.1.c, *supra*.

must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents." *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019). As this Court has previously noted, "bare allegations of joint action or a conspiracy are insufficient; as with any claim, sufficient facts must be alleged to make the claim of joint action or conspiracy plausible." *Separation of Hinduism*, 2021 WL 3633939, at *5 (internal citation omitted).

DLF argues that that the plaintiffs have failed to allege a conspiracy, but this Court has rejected the same argument based on the same allegations in the *Williams* case. *See id.* at *5–6. In both the amended *Williams* complaint and the plaintiffs' complaints in these cases, there are allegations that "DLF created the 'Quiet Time' program as a potential vehicle to enable teaching of [Transcendental Meditation] in public schools . . . despite knowing of the religious elements of [Transcendental Meditation] and the 'Quiet Time' program." *Compare id.* at *5 (quoting 2d Amd. Compl. ¶ 21), *with* Hudgins Compl. ¶ 20, Green Compl. ¶ 18. Similarly, the plaintiffs have alleged that the Board "knew or should have known that they would be violating the First Amendment rights of [] students" and "worked collaboratively to . . . implement the 'Quiet Time' program" with DLF and the University. Hudgins Compl. ¶¶ 26, 27; Green Compl. ¶¶ 24, 25. Drawing all reasonable inferences in favor of the plaintiffs, the Court concludes—as it did previously—that "[t]hese are not 'bare allegations' of willful participation in joint action or conspiracy" but instead sufficiently allege that DLF was "directly and jointly involved in planning and implementing the program in the schools." *Separation of Hinduism*, 2021 WL 3633939, at *5–6.

24

For these reasons, Court denies the defendants' motion to dismiss as it relates to Hudgins's and Green's section 1983 claim against DLF.

### 3. Damages

The defendants also argue that if the plaintiffs' section 1983 claims are not dismissed, the Court should limit recovery to nominal damages. The Court finds that this is premature at best.

Although plaintiffs bringing section 1983 claims must "provide evidence of 'demonstrable emotional distress,' and may not simply point to circumstances of the alleged constitutional violation which might support an inference of emotional injury[,]" *Stevens v. Hous. Auth.*, 663 F.3d 300, 307 (7th Cir. 2011), the defendants cite to no authority limiting a plaintiff to nominal damages at the motion to dismiss stage. Rather, the defendants rely largely on cases discussing this requirement in the context of summary judgment or post-trial motions and cite only two noncontrolling cases adjudicate a motion to dismiss: *Crabtree v. Experian Info. Solutions, Inc.*, 2018 WL 1872112 (N.D. Ill. Apr. 17, 2018), and *Carroccia v. Anderson*, 249 F. Supp. 2d 1016 (N.D. Ill. 2003). *Crabtree* addressed emotional damages in the context of standing— which the defendants admit is not at issue in this case—while *Carroccia* is inapplicable because what this Court held in that case was that a plaintiff "may recover nominal damages for alleged violations of his right to a fair trial" when he has *not* alleged any actual damages. *Crabtree*, 2018 WL 1872112, at *3; *Carroccia*, 249 F. Supp. 2d at 1025. That does not support the defendants' contention in the present case.

The Court could not find—nor did the defendants provide—any authority suggesting that there is a heightened pleading standard for damages on a section 1983

claim. As a result, the Court concludes that the plaintiffs' allegations that they experienced "anger, anxiety, and emotional damage," Hudgins Compl. ¶ 148, Green Compl. ¶ 140, are sufficient at this stage in the proceedings.

## Conclusion

For the reasons stated above, the Court grants the defendants' motions to dismiss [dkt. nos. 24, 28] in part. Gibson's section 1983 claim against all the defendants (Green Compl. Count 1), Green's section 1983 claim against the University (Green Compl. Count 1), and all three plaintiffs' state law claims (Hudgins Compl. Counts 2 and 3, Green Compl. Counts 2 and 3) are dismissed as untimely. Hudgins's section 1983 claim against the University (Hudgins Compl. Count 1) is dismissed for failure to state a claim. As a result, the remaining claims are Hudgins's and Green's section 1983 claims for damages (Hudgins Compl. Count 1, Green Compl. Count 1) against the Board and DLF. The parties should be prepared to discuss further proceedings in these cases and *Williams* at the telephonic status hearing set for July 6, 2023 at 8:30 a.m. The Court will also address the pending motion to extend time and whether the motions for class certification should be amended given the dismissal of certain claims. The following call-in number will be used: 888-684-8852, access code 746-1053.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 30, 2023

26